IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| RUTHIE LONGMIRE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | No. 12-1062-JDT |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

ORDER AFFIRMING DECISION OF THE COMMISSIONER

Plaintiff filed this action to obtain judicial review of the Commissioner's final decision denying her applications for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 *et seq.*, and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff's applications were denied initially and on reconsideration. An administrative hearing was held on July 29, 2011. On August 11, 2011, an administrative law judge ("ALJ") found that Plaintiff was not under a "disability" as defined in the Act. The Appeals Council affirmed the ALJ's decision. This decision became the Commissioner's final decision. Plaintiff then filed this action, requesting reversal of the Commissioner's decision. For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

A Social Security claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. 42 U.S.C. § 405(g). "The court

shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, id.; Jones v. Commissioner, 336 F.3d 469, 478 (6th Cir. 2003) (citing Wyatt v. Secretary, 974 F.2d 680, 683 (6th Cir. 1992)), and whether the correct legal standards were applied. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986). The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. See Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff was forty-three at the time of her application and forty-five when the ALJ issued the decision. R. 47, 165, 169. She has a ninth grade education and has past work experience as an assembler, inspector, housekeeper, press operator, biscuit/salad maker, and cushion maker. R. 74, 96-97, 190-191. She alleges disability due to back/bladder problems, anxiety attacks, tendonitis, hepatitis C, right rotator cuff tear, poor vision, and headaches beginning August 9, 2008. R. 165, 169, 191.

The ALJ enumerated the following findings: (1) Plaintiff met the disability insured status requirements through March 31, 2012; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability; (3) Plaintiff has severe impairments

of hepatitis C, degenerative joint disease, tendonitis, depressive disorder, histrionic personality disorder, anxiety disorder, lumbar degenerative disc disease, and right rotator cuff injury; but she does not have an impairment or combination of impairments which meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4; (4) Plaintiff has the residual functional capacity to perform a limited range of light work; she can stand and/or walk and sit six hours; she can frequently handle, finger, and feel; she can perform simple, routine repetitive tasks; and she can occasionally reach overhead with her right arm; she needs the option to sit/stand as needed and should have only occasional contact with the public and gradual and infrequent workplace changes; she and should avoid production pace work and exposure to cold; (5) Plaintiff is not able to perform her past relevant work; (6) Plaintiff is a younger individual with a limited education; (7) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is not disabled whether or not she has transferable job skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a "disability" as defined in the Act at any time through the date of this decision, 20 C.F.R. §§ 404.1520(g) and 416.920(g).

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. <u>Born v. Secretary</u>, 923 F.2d 1168, 1173 (6th Cir.

1990). The initial burden of going forward is on the claimant to show that she is disabled from engaging in her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Id.

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

> 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2. An individual who does not have a severe impairment will not be found to be disabled.
>
> 3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.
>
> 4. An individual who can perform work that he has done in the past will not be found to be disabled.
>
> 5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Willbanks v. Secretary, 847 F.2d 301 (6th Cir. 1988). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a). Here, the sequential analysis proceeded to the fifth step. The ALJ found that Plaintiff could not perform her past relevant work but there are other jobs that Plaintiff can perform.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. She

specifically argues that the vocational expert's testimony failed to show that she could perform work that exists in substantial numbers in the national economy and that the ALJ failed to accommodate her mental limitations in his residual functional capacity finding. Plaintiff's arguments are not persuasive.

The ALJ found at step four of the sequential evaluation process that Plaintiff could not perform her past relevant work. At step five, the ALJ found that Plaintiff could perform other work that exists in substantial numbers in the national economy and was not disabled. See Jones v. Commissioner, 336 F.3d 469, 474 (6th Cir. 2003) (The Commissioner has the burden of identifying "a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity.")

In response to a hypothetical question including Plaintiff's education, work experience, and residual functional capacity, the vocational identified 730 office helper jobs in Tennessee (and 19,050 such jobs nationally) and 20 telephone survey worker jobs in Tennessee (and 2,940 such jobs nationally) that such a person could perform. R. 99. Plaintiff contends that these numbers are not "significant."

According to the Social Security Act, work existing in the national economy means "work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). The Court of Appeals has declined to identify "one special number which is the boundary between a 'significant number' and an insignificant number of jobs." Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988). The decision is made on a case-by-case basis and is left "to the trial judge's common

sense." Id.

The purpose of the "significant numbers" requirement is to prevent claimants from being found not disabled based on the existence of isolated jobs in very limited numbers in relatively few locations outside a claimant's region. See 20 C.F.R. §§ 404.1566(b), 416.966(b). The jobs that the vocational expert cited in this case are not limited in number and outside Plaintiff's region and are, therefore, jobs that exist in significant numbers in the national economy.

Similar numbers, as those in this case, have been found significant by the Sixth Circuit and other courts. The court in Hall v. Bowen found that 1,350 jobs in the local economy constituted a significant number. See also Bishop v. Shalala, 1995 WL 490126, at *2-3 (6th Cir.) (6,100 jobs in the nation was a significant number of jobs); Lewis v. Secretary, 1995 WL 124320, at *1 (6th Cir.) (14,000 jobs in the nation constituted a significant number); Craige v. Bowen, 835 F.2d 56, 58 (3rd Cir. 1987) (200 jobs in the region is significant); Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir.1988) (holding that 500 jobs "in the region in which Jenkins live[d]" was a significant number); Hoffman v. Astrue, 2010 WL 1138341, at *7 (W.D. Wash.) (150 jobs in Washington and 9,000 jobs in the nation were a significant number of jobs); Mercer v. Commissioner, 2001 WL 257842, at *6 (N.D. Tex.) (500 jobs in Texas and 5,000 in the nation were a significant number of jobs).

Plaintiff argues that a regional approach is required rather than measuring the number of jobs on a statewide basis. The Sixth Circuit has rejected this argument:

[I]t is clear that the term 'region' is flexible and that [the Commissioner] did not

err in considering the number of jobs existing in the entire [state]. . . . The fact that the statute speaks in terms of work existing in the national economy . . . does not restrict [the Commissioner] to consideration of work that exists in the immediate area of a claimant's residence [and] gives the Secretary sufficient latitude to treat an entire state as the region to be considered.

Pollice v. Secretary, 1988 WL 28536, at *1 (6th Cir.). The ALJ, therefore, properly relied on the vocational expert's testimony to find that Plaintiff could perform other work.

The ALJ determined that Plaintiff could perform a reduced range of light work with restrictions for Plaintiff's mental limitations. The ALJ limited Plaintiff to work that allows her to perform simple, routine repetitive tasks; requires only occasional contact with the public and does not require production pace work; and has only gradual and infrequent workplace changes. R. 60-61. In making this finding, the ALJ weighed the medical assessments in the record.

The "treating source rule" demands that an ALJ give controlling weight to a medical opinion of a claimant's treating physician as long as it "is well-supported by medically acceptable ... diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). If an ALJ declines to give controlling weight to such an opinion, the rule still requires the ALJ to fully consider it in accordance with certain factors, id. § 404.1527(d)(2)-(6), and to provide "good reasons" for discounting the opinion, id. § 404.1527(d)(2)-i.e., reasons "sufficiently specific to make clear to any subsequent reviewers the weight ... [given] to the ... opinion and the reasons for that weight," SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996).

In the present case, the ALJ gave some weight to the opinion of treating physician Dr.

Thomas Brown because the record supported Dr. Brown's assessment of Plaintiff's ability to sit, stand, and walk. Dr. Brown opined that Plaintiff could perform full-time work with limitations on lifting that were somewhat ambiguous. R. 845-847. For example, Dr. Brown stated that Plaintiff could lift "very little," could "rarely" climb, balance, stoop, crouch, kneel, or crawl, and would have trouble reaching, handling, feeling, and pushing/pulling. R.845-846. These vague statements do not define the actual weight that Plaintiff can lift or the actual frequency at which she can perform these activities.

Furthermore, Dr. Brown based his opinion on Plaintiff's reported back and shoulder pain. R. 845-846. The medical evidence, however, undermines any allegations of disabling limitations due to back and shoulder pain. Accordingly, the ALJ properly gave Dr. Brown's assessment little weight.

The ALJ gave no weight to examining physician Dr. Robert Adams, who opined that Plaintiff could perform less than sedentary work, R. 685, because the opinion was unsupported by medical evidence and conflicted with other evidence. See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). In July 2009, Dr. Adams opined that, in a workday, Plaintiff could lift less than ten pounds, stand less than two total hours, and sit less than six hours. R. 685. This assessment effectively meant that Plaintiff could not meet the demands of even sedentary full-time work.

Dr. Adams based his assessment on Plaintiff's reports of right shoulder and back pain, R. 685, but his exam findings do not support the limitations that he assessed. While Plaintiff reported neck and back pain on range of motion ("ROM") testing, Dr. Adams noted no spinal

8

tenderness or spasms or bony abnormalities of the back. R. 681. She had full strength in all major muscle groups with no tenderness, swelling, or spasm and normal station; she walked without an ambulatory device and could get out of a chair and off the examining table without difficulty. R. 682. ROM testing was normal in the cervical spine and only slightly reduced in the dorsolumbar spine. Id. Passive ROM testing in the right shoulder was entirely normal, although active testing was slightly reduced. Id. These findings do not support Dr. Adams's conclusion that Plaintiff could not work full-time or lift ten pounds.

The assessment of Dr. Adams conflicted with other evidence. Regarding back pain, Plaintiff had several negative straight leg raise ("SLR") tests between 2003 and 2011, indicating a lack of pain in her back. R. 316, 322, 324, 354, 361, 365, 367, 369, 374, 376, 379, 382, 807. Plaintiff frequently had no spine muscle spasm. R. 322, 324, 361, 363, 365, 367, 369, 371, 374, 376. July 2004 spine x-rays were normal. R. 404, 415. September 2004 spine imaging showed no significant radiographic abnormalities. R. 287. In April 2005, spine x-rays showed minimal curving and were otherwise normal. R. 406. Cervical spine imaging from November 2006 was entirely unremarkable. R. 660. A radiographic interpretation in August 2010 showed only mild lumbar degenerative disc disease without disc herniation or stenosis. R. 783. These findings indicate little limitation in Plaintiff's ability to work due to back pain.

Plaintiff told Dr. Adams that she hurt her shoulder in December 2008, R. 679, but treatment notes from that time showed no joint issues like crepitus, effusion, synovitis, or tenderness. R. 382. She presented to an emergency room in February 2009 complaining of

shoulder pain after picking up a car seat with a child in it but had full sensation and intact ROM with some limitation in abduction. R. 478, 545-546, 556. By late 2010, Plaintiff had only mild and localized pain in the right shoulder, R. 777, 787, and demonstrated full ROM. R. 807. Subsequent treatment notes indicate similarly mild symptoms. R. 817, 833. Imaging notes from June 2011 show no fracture or subluxation but indicate a downsloping acromion; the interpreting physician indicated no acute findings. R. 829. This evidence militates in favor of a finding that Plaintiff had little restriction in using her shoulder.

The ALJ also considered the assessment of examining psychological examiner Gary Smithson that Plaintiff had moderate adaptive deficits and marked limitations in understanding, remembering, and concentration, persistence, and pace ("CPP"). R. 675. The ALJ gave no weight to Smithson's assessment because it was inconsistent with other evidence.

Smithson assessed marked limitations due, in part, to memory impairment. R. 675. In July 2009, Plaintiff alleged difficulty remembering basic facts, such as her address. R. 673. However, her allegedly poor memory was inconsistent during the examination. For example, she remembered that Michael Jackson had recently died and that she had, nine years prior, attended mental health treatment, but only for a short period because "her insurance ran out." R. 672-673. Plaintiff recalled that she was unable to work allegedly due to two strokes, back and bladder problems, panic attacks, hepatitis C, and a torn rotator cuff. R. 671. Smithson noted the inconsistency in Plaintiff's recall, opining that further testing "would possibly be beneficial for diagnostic clarification." R. 675. The unresolved inconsistency undermines

Smithson's assessment.

Additionally, Smithson's assessment of moderate limitation in Plaintiff's social skills was unsupported. Treatment notes between 2004 and 2008 documented Plaintiff's normal, appropriate behavior and adequate psychosocial support systems. R. 548, 558, 562, 591, 607, 617, 631, 650, 667. Plaintiff could "behave in an acceptable manner when engaged in activity" and was cooperative during the exam. Plaintiff denied having conflicts with others. She spent at least an hour and a half each week with her niece, and she reported grocery shopping and cooking with relatives. R. 673. These social activities are inconsistent with Smithson's assessment.

Similarly, the evidence did not support Smithson's assessment of marked limitations in CPP and moderate limitation in adaptation due to poor concentration. R. 675. Plaintiff bathed and dressed herself, did housework, drove, and watched five to six hours of TV daily. R. 672-673. She spent an hour and a half weekly doing laundry and also cooked and counted change. R. 672. Her dialogue was not circumstantial, tangential, obsessive, or scattered, and she had no significantly loosened association. R. 674. Exams between 2004 and 2008 found that Plaintiff was alert and oriented, could perform all ADLs without assistance, and demonstrated willingness and ability to learn. R. 548, 558, 562, 591, 607, 617, 631, 650, 667. In October 2010, Plaintiff was alert, with no disorientation. R. 752. This evidence shows that Plaintiff could maintain extended concentration, thus contradicting Smithson's assessment.

In July 2009, Dr. Adams noted that Plaintiff was alert, fully oriented, cooperative, reliable, appropriate, and demonstrated normal intellectual function. R. 681. In August 2009,

state agency medical consultant Dr. McAlister found the evidence insufficient to establish any mental impairment. R. 686-699. In October 2010, Plaintiff reported occasional depression. R. 749, 765. By November, Plaintiff demonstrated no signs of depression but exhibited some signs of situational anxiety while caring for her terminally ill mother. R. 775-776. In February 2011, Plaintiff was alert, cooperative, well groomed, and fully oriented. R. 816. In March and May 2011, she displayed no symptoms of anxiety, depression, or other mental impairment, R. 820, 822-823, and was alert, cooperative, well groomed, and fully oriented. R. 832-833. This evidence further supports the ALJ's decision to give Smithson's assessment no weight.

Based on the evidence described above, the court finds that substantial evidence supports the weight given by the ALJ to the opinions of the medical experts.

It is the ALJ's responsibility to determine residual functional capacity based on all the relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of her limitations. See Anderson v. Shalala, 51 F.3d 777 (8th Cir. 1995); 20 C.F.R. §§ 416.945(a) & 416.946. Here, the ALJ considered all of the evidence in the record and explained the basis for his residual functional capacity finding. As the ALJ's residual functional capacity was within the "zone of choice" supported by substantial evidence, his finding is upheld. See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

Because there is substantial evidence in the record supporting the Commissioner's decision denying Plaintiff's applications for benefits, the decision of the Commissioner is

AFFIRMED. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE